UNPUBLISHED OPINION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Samuel STANGO,<br><br>           Plaintiff,<br>   v.<br><br>TOWNSHIP OF LOWER, NEW JERSEY, *et al.*,<br><br>           Defendants. | Civil No. 14-1973 (RBK/AMD)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

Plaintiff Samuel Stango had a spat with his girlfriend, defendant Regina Sheets, and "slammed [her] into the wall." (Compl. at 10.) He was then prosecuted for a charge of simple assault in municipal court. Convicted and awaiting appeal, he filed suit in this Court claiming, among other things, malicious prosecution under 28 U.S.C. § 1983. Defendants—the Cape May County Prosecutor's Office, Robert Taylor, Michelle DeWeese, Lynne Frame, Paul Skill and David Hogan (collectively, the "Prosecution Defendants")—have moved for dismissal of this complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that sovereign immunity bars the action and in the alternative that the complaint fails to state a claim. (Doc. No. 46.)

Because much of this action is barred by sovereign immunity and the balance fails to state a claim, the Court grants Defendants' motion. The Court also declines to exercise its supplemental jurisdiction over the state law claims, including a cryptic claim against Assistant Prosecutor DeWeese asserted against her in her individual capacity. Finally, the Court *sua sponte* dismisses Sheets from this matter for lack of subject-matter jurisdiction.

1

## I. THE FACTS

Samuel Stango had been a police officer for the Township of Lower since 1991. As he puts it, he "had been dating a female, Regina Sheets" since February 2011, in a "drama filled" relationship. (Compl. at ¶ 20.) Their relationship was apparently on-and-off for some time, and on March 20, 2012, Stango initiated the latest break up. Sheets responded angrily. She came over unannounced, Stango let her in, and she broke a picture frame of the couple. (*Id*. at 9.) She was asked to leave but refused, and Stango asserts that she told him if he called the police she would tell them he pointed his gun at her.

Although the subsequent municipal trial would call some of this into question, we take Stango at his word for purposes of whether to grant 12(b) dismissal. What is clear is that shortly after this encounter, Stango received a text from Sheets saying "I have a lump on my head now, starting to turn into a bruise. Thank you. I hope ur [sic] proud of yourself." (Compl. at 9.) Alarmed, Stango adhered to police protocol and talked to a superior at the police station about what to do. Later that day, Stango received a series of texts from Sheets saying, among other things, "the lump on my head doesn't lie . . . it's right on my forehead where I hit the keyrack when you slammed me into the wall." (*Id.* at 10.) Stango maintains that this was a "bogus complaint."

Eventually word of this episode got to (now retired) Lower Township Chief of Police Brian Marker. He directed that Stango come in for an interview. (*Id.* at 11.) Stango pleaded to his superiors that Sheets had begun to "manufacture" what was, if not a textbook case, then at least a text-message case of assault against him. (*Id.*) Stango maintains that Sheets "had been convicted . . . for the very same thing against her previous suitor." (*Id.* at 11-12.) Ultimately though, after officers investigated Stango's home and interviewed Sheets, Stango was arrested. (*Id.* at 14.) The

Cape May County Prosecutor's Office investigated, and Robert Taylor, Michelle DeWeese, Lynne Frame, Paul Skill and David Hogan were all involved in those efforts in their official capacities.

Trial commenced on June 13, 2012 before a municipal court in Cape May City. For purposes of this decision it is sufficient to say that Stango was convicted on a charge of simple assault. (*Id.* at 16-20.) He was sentenced to a fine of $250 and court costs of $158. He appealed, and the Superior Court of New Jersey, Appellate Division affirmed the conviction. *See State v. Stango*, 2014 WL 6474353 (N.J. Super. Ct. App. Div. Nov. 20, 2014).

But before the appeal was heard, Stango, proceeding *pro se*, brought this suit against the Township of Lower, New Jersey and numerous other defendants, alleging a number of violations of statutory and common law and seeking damages, declaratory, and injunctive relief. Stango's complaint alleges violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-12 (Count One); a cluster of statutory and common law claims, such as a 28 U.S.C. § 1983 claim and a malicious prosecution claim, lumped together as Count Two; and a claim of intentional infliction of emotional distress (Count Three). Count One was brought against Defendants Lower Township, Lower Township Police Department, Michael Voll, Brian Marker, Martin Biersbach, and William Mastriana, all of whom have since been dismissed from this case. (Doc. No. 58.) Count Two addresses only the Prosecution Defendants, and Count Three addresses the Prosecution Defendants and Stango's ex-girlfriend, Sheets. Elsewhere in the pleadings, Stango has sued DeWeese in her individual capacity.

The Prosecution Defendants have moved for dismissal of this complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff has not opposed the motion, but this Court must still analyze whether Plaintiff has properly asserted jurisdiction or stated a claim. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

## II. LEGAL STANDARD

### A. THE 12(b)(1) STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject-matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). On a motion under Rule 12(b)(1), it is the plaintiff who bears the burden of establishing subject-matter jurisdiction. *Gould Elec., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). And although sovereign immunity is not strictly a matter of subject-matter jurisdiction, its jurisdictional qualities may be considered under a 12(b)(1) motion. *See, e.g.*, *Wilson v. New Jersey Dep't of Corr.*, 2017 WL 4618156, at *2-4 (D.N.J. Oct. 13, 2017) (citing *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008)).

A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Gould Elec.*, 220 F.3d at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)); *see United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

4

### B. THE 12(b)(6) STANDARD

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

### III. DISCUSSION

#### A. The Suit for Damages

Ordinarily, "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—[are] generally immune from suit by private parties in federal court" pursuant to the Eleventh Amendment. *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). *See also Regents of the Univ. of California v. Doe*, 515 U.S. 425, 431 (1997) ("it is the entity's potential legal liability, rather than its ability or inability

to require a third party to reimburse it, or to discharge the liability in the first instance[,] that is relevant."). A driving purpose of Eleventh Amendment immunity is to protect the state treasury from private parties. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").

"Although the language of the Eleventh Amendment refers only to 'States,' the Supreme Court has held that the immunity extends to entities that are considered arms of the state." *Bowers v. NCAA*, 475 F.3d 524, 545 (3d Cir. 2007) (citing *Regents of the Univ. of California*, 519 U.S. at 429). "A state entity is properly characterized as an arm of the state and thus entitled to immunity from suit in a federal court under the [E]leventh [A]mendment when a judgment against it 'would have essentially the same practical consequences as a judgment against the State itself.'" *Bowers*, 475 F.3d at 546-46 (3d Cir. 2007) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). The Third Circuit has adopted a three-part test to determine when an entity is a state actor, examining "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Fitchik*, 873 F.2d at 659.

It is clear that under *Fitchik*, the Cape May County Prosecutor's Office is an arm of the state. Judgments against it would come out of the state treasury, the Office performed a state function by prosecuting an assault charge, and the entity is supervised by the New Jersey Attorney General. *See Beightler v. Office of Essex County Prosecutor*, 342 Fed. Appx. 829, 832 (3d Cir. 2009) (noting that New Jersey county prosecutorial offices are arms of the state when engaged in "classic law enforcement and investigative functions"); *Wright v. Middlesex Cty. Prosecutor's*

6

*Office*, 2012 WL 1900646, at *3 (D.N.J. May 24, 2012) (finding prosecutor's office to be an arm of the state); *Pitman v. Ottehberg*, 2011 WL 6935274, at *8 (D.N.J. Dec. 30, 2011) (same).

The other Prosecution Defendants, all of whom are natural persons employed by the Prosecutor's Office and sued in their official capacities, are likewise state actors for purposes of sovereign immunity. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

We now turn to the relief sought by Stango against the Prosecution Defendants and whether sovereign immunity bars this Court from hearing the action. As a rule, sovereign immunity prevents federal courts from hearing suits against unconsenting states or state actors. This immunity, however, is not absolute, and is subject to three exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Hess*, 297 F.3d at 323 (citation omitted). The Prosecution Defendants, all engaged in their official capacities, have not consented to suit in federal court, and immunity has not been abrogated by congressional action. Thus, this Court cannot exercise jurisdiction over this action to the extent it seeks damages against any defendant save DeWeese and Sheets in their individual capacities.

But Stango also seeks relief that is essentially injunctive or declaratory—he seeks, for example, mandated "training in NJ Attorney General Guidelines, Constitutional and New Jersey law" for some of the Prosecution Defendants—and that potentially falls within the scope of the third exception, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). As the Third Circuit has explained,

> the theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which

7

sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct.

*Hess*, 297 F.3d at 323 (citing *Ex parte Young*, 209 U.S. at 159–60; *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 103 (1984) (explanatory parenthetical omitted)). Simply put, *Ex parte Young* holds state officials "responsible to the supreme authority of the United States," and will apply if the alleged violation involves the United States Constitution or a federal statute. *Id.* at 323–24 (citing *Balgowan v. New Jersey*, 115 F.3d 214, 218 (3d Cir. 1997)); *Pennhurst*, 405 U.S. at 105. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

Although Stango has not alleged what the Prosecution Defendants did with much specificity, he has pleaded federal-question jurisdiction for the prospective relief he seeks. The complaint contains a cause of action under 28 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, and seeks declaratory relief to redress that. That is the sole claim that provides him jurisdiction for prospective relief, as all the other claims are torts seeking damages or else allege violations of New Jersey law which do not provide federal rights that § 1983 can vindicate. We thus have federal-question jurisdiction to hear the § 1983 claim, but only the § 1983 claim, and turn to whether Stango has stated a claim for which relief can be granted.

### B. The Declaratory and Injunctive Relief

Although pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), that does not mean we hold them to no standards at all. Stango's complaint recounts almost no set of facts against the Prosecution

8

Defendants save their involvement in prosecuting him for a simple assault charge that he was convicted on and that the Appellate Division subsequently affirmed. Stango did not have to provide "detailed factual allegations," but he was obliged to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In any event, there are simply not enough facts to make out a case against the Prosecution Defendants for the § 1983 claim, which is the only conceivable basis for Stango's jurisdiction. The thrust of Stango's suit against the Prosecution Defendants is that he abided by police regulations by reporting that he and his girlfriend had a fight, and that he was maliciously prosecuted for doing so. But to state a claim for malicious prosecution under § 1983, Stango must show, among other things, that "the criminal proceeding ended in his favor." *Carney v. Pennsauken Twp. Police Dep't*, 2013 WL 2444043, at *2 (D.N.J. June 3, 2013). As he was convicted for assault, that is a non-starter. The other bases for suit that Stango has identified, the Fourth and Fourteenth Amendment, are so expansive that this Court will not hazard a guess as to what Stango means by them. We thus dismiss the § 1983 claim for failure to state a claim.

To the extent any other state-law claims against the Prosecution Defendants remain that seek prospective declaratory or injunctive relief, they are within this Court's discretionary supplemental jurisdiction. The Court will exercise that discretion and dismiss them under 28 U.S.C. § 1367.

### IV. Dismissal of DeWeese and Sheets

The Court notes that Stango has sued Assistant Prosecutor DeWeese as well as Sheets in their individual capacities. We are unable to ascertain from the pleadings the nature of the suit

9

against DeWeese in her individual capacity, and to the extent the suit against her invokes the same claims described above it is dismissed. However, Stango has also sued DeWeese for a claim of intentional infliction of emotional distress under—presumably—New Jersey law. Stango, who resides in New Jersey, has not pleaded the residency of DeWeese, but the burden is on him to prove that this Court has jurisdiction. As the Court has no reason to believe DeWeese does not reside in New Jersey, this is a non-diverse claim that can only fall within this Court's supplemental jurisdiction. But as we have noted, the Court declines to exercise that jurisdiction.

Finally, Stango has also sued Sheets for intentional infliction of emotional distress. Sheets, like Stango, resides in New Jersey. There is thus no diversity between the parties. As we have "an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), we find this Court lacks subject-matter jurisdiction over Sheets. She is dismissed as well.

## V. CONCLUSION

For the reasons stated above, the Prosecution Defendants' motion is **GRANTED**. On the Court's own motion, Defendant Sheets is also **DISMISSED** from this case. An order follows.


Dated: 01/10/2018                                         /s Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge